## INTEREST.

FANNING and others, appellants *v.* CONSEQUA, respondent.
On appeal, 17 J. R. 511–524.

3 J. C. R. 587–614.

*Rate of Interest on Sales made in Foreign Countries, and
Consignments made to Factors in New York ; Lex Loci
Contractus ; How far Factor or Agent of Consignee is
Responsible for Acts of his own Government, e. g. an
Embargo.*

THE bill in this case was filed in the Court of Chancery,
by Consequa, the plaintiff below, a native merchant of Canton,
in China, stating that in December, 1807, he shipped on board a
vessel at Canton, a cargo of teas, consigned to the defendants,
E. Fanning, H. Fanning, and Willett Coles, to sell for the
plaintiff, and which were received by them as his factors.
It stated subsequent large shipments down to Nov. 1810, of
sundry cargoes of tea, nankeens, &c., consigned to the de-
fendants to sell, and remit the proceeds, and which were
received and sold by the defendants. That by an agreement
between the plaintiff and defendants, in relation to their
receiving and selling the goods so consigned to them as fac-
tors, they were to sell the same with all reasonable expedition
and for the best prices, and for a reasonable reward to be re-
tained, and to remit the proceeds in specie to Canton ; and
for any unreasonable delay, the defendants were to pay 12
per cent. interest, from the time such sales and remittances
could reasonably have been made ; that being the rate of
interest *where the plaintiff resided,* and where the *contract
was to be fulfilled by the remittances.* Prayer, that the
defendants be decreed to come to a full account, and to pay
what shall be found due to the plaintiff, &c.

It was also charged in the bill that the defendants, by their
agent, one Chase, in January, 1811, gave a promissory note
to the plaintiff for $35,717, at 16 months after date, with inter-
est at 12 per cent., which was the lawful interest at Canton,

and that it remained unpaid; having been given for the, goods sold and delivered to the defendants. That in December, 1809, two other agents of the defendants gave a promissory note to the plaintiff at Canton, for $39,690, at 15 months after date; which note when due, should also bear interest at 12 per cent., and that it was also unpaid, &c.

The defendants in their answer denied a general partnership between them but admitted that they were jointly concerned in shipping, importing, and selling on commission, divers cargoes of merchandize, &c. They stated various matters in defence, and various counter claims, by way of set-off and deduction, which it is unnecessary to detail; the only legal points on which the decree of the Chancellor was *reversed*, in the Court of Errors, being the rate of interest to be charged on the *consignments* to the defendants, after, the sales were made, and the proceeds came to the hands of the defendants.

With regard to the Chase note, the Chancellor says, 3 J. C. R. 608:

"The next objection is, that the defendants are charged with Chase's note for $35,711, or with goods, or with goods sold and delivered, to that amount; "whereas, they ought only to be charged with the same, as for goods *consigned* to them, to be sold for the account of the plaintiff, and that in that way, they are willing to account." The Chancellor then reviews the facts and concludes thus: " But this point need not be pursued farther; for the petition for a rehearing admits that the defendants are responsible for the goods to the amount of the note, as for a *consignment*; and if instead of a consignment, the act ought to be deemed a sale, then there is an end of the question."

Upon this point, Platt, J., who delivered the only opinion in the Court of Errors, concurs with the conclusion of the Chancellor; and that part of the decree was accordingly affirmed, which allowed interest on the amount of the Chase note, according to the rate in China. He says;

"I also fully concur with the Chancellor, that the cargo of goods shipped in the ' Chinese,' and for which Chase gave a note, as agent for the appellants, must be deemed as goods sold and delivered by Consequa to them at Canton. Even

38

admitting that Chase had no previous authority to make such a purchase, or to give such a note on their account, yet as they actually received and converted the goods with full notice that they were sent by Consequa as goods sold, they are justly charged with the amount, according to the invoice price; and with interest according to the rate allowed in China; the contract of purchase having been made there; and the price payable there."

In regard to the rate of interest on the rest of the consignments, the Chancellor decided as follows:

1. " The defendants claim the difference between 10 per cent. per *annum*, under the agreement which they set up, and the legal interest of this country, on certain notes, the amount of which they were prevented from remitting for one year, by reason of the embargo. The solid objection to the claim is to be found in the principle declared in *Conway* v. *Gray*, 10 East, 536, *that in all questions arising between the subjects of different states, each is a party to the public authoritative acts of his own government, and he is as much incapacitated from making the consequences of an act of his own state, the foundation of a claim to indemnity upon a foreign subject, as he would be, if such act had been done immediately and individually by himself.* Lord Ellenborough said, that this same principle was established in *Touteng* v. *Hubbard*, 3 B. and P. 291, and indeed, we find the principle declared in every period of the *English* law, that every subject is to be deemed a party to the laws of his own government. Bro. Abr. tit. Parliament, pl. 41. Dyer 236, pl. 148, 9 Co. 107, a. Lord Mansfield in *Wadham* v. *Marlowe*, cited in 8 East. 314, n. The force of this doctrine must be specially felt and acknowledged in this country, where the acts of the government are practically, as well as theoretically, the act of the representatives of the people."

2. " Another ground for rehearing is, that by the decree the defendants are charged, on notes and goods sold and consigned, with interest at the rate of 12 per cent. per annum, whereas, the defendants ought not to be charged, in the case of consignments, where the contract was made here, with any greater interest than the lawful interest of this state."

" 'The answer to this objection is, that it is an acknowledged rule, that interest must be paid according to the law of the country where the debt was contracted and to be paid, and not where it is sued for. The cases cited by the plaintiff's counsel show this. The principle is entirely applicable to the case of consignments. The plaintiff consigns a shipment to the defendants, and the cargo is received at Canton by the agent of the defendants on their behalf. Canton is then the place where the contract is made, and Canton is the place where the debt is to be paid. The defendants admit, in all the cases of cargoes consigned to them, that they were to receive and remit the proceeds; and the interest for which they are chargeable, is upon the sum which ought to have been remitted, and to be computed from the default. There is no difference in principle, as to this point, between a sale and a consignment. The contract is equally made, and the debt equally to be paid in China, in the one case as in the other; and if we should deny to the Chinese merchant, his own legal rate of interest on such contracts, we should be doing him an injustice which he would not meet with from the commercial part of Europe. To refuse to enforce such foreign contracts, as to interest, say the English books, would put a stop to all trade."

Upon appeal from this decree, the Court of Errors *reversed* so much of it as relates to the rate of interest on the cargoes, except that included in the Chase note.

Platt, J., says:

" The other cargoes have been properly considered by the Chancellor, as consigned to the appellants, as general commission merchants, under a contract on their part, to sell the goods for account of the consignor, and to remit the nett proceeds."

" But in allowing interest according to the law of China, on such nett proceeds, it seems to me, his honor, the Chancellor, has *erred* in his application of the rule of *lex loci contractus.*"

Mr. Justice Platt then examines the rule as laid down by Huberus, (*de conflictu legum,* v. 2, b. 2, tit. 3.) Also the English and American cases on the subject. *Champaut* v. *Lord Ranelagh,* Pr. Ch. 128; *Robinson* v. *Bland,* 2 Burr.

1077; *Thompson* v. *Ketchum*, 4 J. R. 285; *Smith* v. *Smith*, 2 J. R. 235; *Ruggles* v. *Keeler*, 3 J. R. 263; *Emory* v. *Greenough*, 3 Dall. 369; *Van Schaick* v. *Edwards*, 2 J. C. 355.

"In *Elkins* v. *E. J. Company*, 1 P. Wms. 395," Mr. Justice Platt observes, "cited by the Chancellor, it was decided, that for a tortious sale of the plaintiff's ship *in India*, (by his agent there,) to the defendants, they should account for the value in India, with 12 per cent. interest, according to the laws of that country, deducting only the charge of remittance to England, where the remedy was sought. But that cause bears a marked distinction from the one now before us; because, in that case, the whole transaction took place, and the entire cause of action arose in India."

"There is no doubt of the rule laid down by the Chancellor; "that interest must be paid according to the law of the country where the debt was contracted and to be paid." He says, " in this case, the plaintiff consigns a shipment to the defendants, and the cargo is received at Canton, by the agent of the defendants on their behalf; Canton is then the place where the contract is made; and Canton is the place where the debt is to be paid."

"With great respect, it seems to me, that his Honor the Chancellor did not advert to the important consideration that by the terms of the contract so made at Canton, *the goods were to be brought to New York*, not for the account and at the risk of the consignees, but to be sold *here*, by them, as factors or commission merchants, who were to remit the nett proceeds to the consignor at Canton."

"Here the words of Huberus apply ' *contraxisse unusquisque in eo loco intelligitur, in quo ut solveret, se obligavit.*"

"I apprehend it is not the case of a *debt contracted, and to be paid at Canton*. The contract was made *there*, but it was to be executed *here*. The parties had express reference to this country, as the theatre of operations under the contract. Consequa had a right (and he exercised it in part,) of drawing for and receiving the nett proceeds at New York, at any time before they were remitted; or he had a right to direct the mode or channel of remittance, provided it was not unlawful.

"Hence, I infer, that the contract did not oblige the consignees to pay the avails of the cargoes to Consequa at Canton. On the contrary, this country was the only sphere of their duties; the *res gesta* was *here*, and they were not bound to do anything but with a reference to our own laws."

"Whether the *American embargo* furnished any excuse for not remitting the nett proceeds of the consigned cargoes, on the amount collected on the note, (sent to the defendants for collection,) so as to bar the claim for interest during the time in which it was unlawful to make such remittances, is a question, which I think does not arise in the case. The appellants have laid no foundation for such exemption; because, for aught that appears, they had the *use* of the money during the embargo; and therefore ought to pay interest for it. If they had kept that money distinctly, as a *deposit* for Consequa, then the question would have arisen, upon which I forbear to express any decided opinion."

"In regard to the debt due *for goods sold* to the appellants, I have no doubt the law is, as stated by the Chancellor, to wit; 'that in questions arising between the subjects of different states, each is a party to the public authoritative acts of his own government and he is as much incapacitated from making the consequences of an act of his own state, the foundation of a claim to indemnity upon a foreign subject, as he would be if such act had been done immediately and individually by himself.' *Conway* v. *Gray*, 10 East. 536. But I am not prepared to say, that an omission to perform the office of an agent or commission merchant, where the law forbids his acting in that capacity, would subject the factor to the same hard rule. *The absolute debtor* contracts in his own right, for his *own exclusive* benefit, but the consignee is the mere agent or servant of the consignor, acting here, chiefly for the benefit, and at the risk of the principal, and as his representative. It, therefore seems to me, *very questionable*, whether the acts of his government ought to be imputed to the agent, in a question between him and his principal."

"Upon the whole case, therefore, my opinion is, that the decree ought to be *reversed*, to the end that in restating the

accounts between these parties, the appellants be charged with interest at the rate of 7 per cent. instead of 12 per cent. per annum, on the nett proceeds of the goods consigned to them to be sold for the account of the respondent."

This being the unanimous opinion of the court, it was decreed accordingly.

## · JUDGMENT CREDITOR.